KAB

WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Drew Michael Witzig, | No. CV-24-02127-PHX-JAT (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| CoreCivic, et al., | |
| Defendants. | |

Plaintiff Drew Michael Witzig, who is currently confined in the Arizona State Prison-Kingman, brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  Pending before the Court are Defendant's Motion for Summary Judgment (Doc. 34)[1] and Plaintiff's Motion for Hold (Doc. 39).  Both Motions are fully briefed.

**I.    Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a First Amendment access-to-the-court claim against Defendant CoreCivic based on Plaintiff's allegations that CoreCivic had a policy, practice or custom of not allowing prisoners to disburse money to investigators/attorneys, which prevented Plaintiff from obtaining relevant case law in his habeas action.  (Doc. 6.)

. . . .

---

[1] Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 36), and he opposes the Motion.  (Doc. 55.)

**II.   Plaintiff's Motion to Have Hold Place on Plaintiff**

Plaintiff requests that the Court not allow him to be transferred because a move would cause him to lose access to unidentified "rebuttal witnesses," and if he was moved close to a deadline, he may not be able to timely meet a deadline. (Doc. 39.)  In Response, Defendant asserts that it does not have control over which facilities Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) prisoners are moved to and, to the extent Plaintiff requests reasonable extensions, CoreCivic does not object. (Doc. 41.)

The Court lacks jurisdiction over Plaintiff's request for relief.  ADCRR is not a Defendant in this action and the Court cannot order it to change Plaintiff's custody or classification status.  *See* Fed. R. Civ. P. 65(d)(2) (a preliminary injunction only binds those who receive actual notice of it by personal service or are parties, their officers, agents, servants, employees, and attorneys, and persons in active concert); *see Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

Moreover, Plaintiff's request for injunctive relief is unrelated to the claim in his operative Complaint.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Center*, 810 F.3d 631, 636 (9th Cir. 2015) ("[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction"); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (a party seeking injunctive relief must establish a relationship between the claimed injury and the conduct asserted in the complaint); *see also Prince v. Schriro*, CV-08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (unless a claim concerns access to the courts, the Plaintiff must show a nexus between the relief sought and the claims in the lawsuit.).

Although Plaintiff appears to attempt to frame a transfer as an eventual denial of access to the courts, Plaintiff's claim that he would not be able to access unidentified witnesses or might miss a deadline or not have relevant property is pure conjecture and

speculation and is not sufficient to meet Plaintiff's burden of demonstrating he is entitled to injunctive relief. Accordingly, Plaintiff's Motion for Hold will be denied.

### III. Motion for Summary Judgment

Defendant moves for summary judgment on the ground that it did not violate Plaintiff's First Amendment rights.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw

all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## IV.  Facts

### A.  Plaintiff's Criminal Case and Habeas Action

Plaintiff was convicted at trial by a jury on charges of possession of dangerous drugs for sale and drug paraphernalia, and sentenced to concurrent prison terms, the longest of which was 15 years. (Doc. 35 ¶ 16; Doc. 56 ¶ 16.) Plaintiff filed a direct appeal, which affirmed his convictions and sentences. (Doc. 35 ¶¶ 17-18; Doc. 56 ¶¶ 17-18.) Plaintiff filed a Petition for Post-Conviction Relief through counsel, which was dismissed. (Doc. 35 ¶¶ 19-21; Doc. 56 ¶¶ 19-21.) Plaintiff appealed the dismissal of the Petition for Post-Conviction Relief, the appeal was denied, and the Arizona Supreme Court denied Plaintiff's Petition for review of that appeal. (Doc. 35 ¶¶ 22-24; Doc. 56 ¶¶ 22-24.) Plaintiff filed a second petition for Post-Conviction Relief, which was denied, and the Arizona Court of Appeals denied Plaintiff's appeal of that decision. (Doc. 35 ¶¶ 25-29; Doc. 56 ¶¶ 25-29.)

On February 21, 2021, Plaintiff filed a Petition for Writ of Habeas Corpus. (Doc. 35 ¶ 32; Doc. 56 ¶ 32.)[2] On August 5, 2021, Defendant Shinn filed an Answer to Petition for Writ of Habeas Corpus. (Doc. 35 ¶ 34; Doc. 56 ¶ 34.) On September 3, 2021, Plaintiff filed an Application for Enlargement of Time to File Reply to State's Answer to Petition for Writ of Habeas Corpus, requesting that the Court extend the deadline for Plaintiff to file a Reply by 30 days due to "COVID lockdowns and limited access to the law library." (Doc. 35 ¶ 35; Doc. 56 ¶ 35.) The Court granted Plaintiff's request and extended the deadline for Plaintiff to file a Reply to October 13, 2021. (Doc. 35 ¶ 36; Doc. 56 ¶ 36.) On October 7, 2021, Plaintiff filed his Reply to State's Response for Writ of Habeas Corpus. (Doc. 35 ¶ 37; Doc. 56 ¶ 37.) On February 22, 2022, the Court issued an Order, directing Defendant Shinn to file a Supplemental Answer and permitting Plaintiff 21 days

---

[2] This habeas action is the subject of Plaintiff's First Amendment claim in the instant action.

after the service of Defendant Shinn's Supplemental Answer to file a Supplemental Reply. (Doc. 35 ¶ 38; Doc. 56 ¶ 38.)  On March 24, 2022, Defendant Shinn filed a Supplemental Answer.  (Doc. 35 ¶ 39; Doc. 56 ¶ 39.)  On April 11, 2022, Plaintiff requested that the Court extend the deadline for him to file a Supplemental Reply, asserting that "new facility policy has greatly limited our dayroom time and therefore opportunity to be able to sit down at a table and do legal work has also become limited.  Further, access to the law library has been greatly restricted sometimes being denied law library access for a month at a time." (Doc. 35 ¶ 40; Doc. 56 ¶ 40.)  The Court granted Plaintiff's request and extended the deadline for Plaintiff to file a Supplemental Reply to May 17, 2022.  (Doc. 35 ¶ 41; Doc. 56 ¶ 41.)   On May 13, 2022, Plaintiff filed his Supplemental Reply to State's Supplemental Answer to Petition for Writ of Habeas Corpus.  (Doc. 35 ¶ 42; Doc. 56 ¶ 42.) On June 2, 2022, Magistrate Judge Boyle issued a 45-page Report and Recommendation (R&R) recommending that Grounds 3, 4B, 5C, 6C, 7C, 8B, and 9B be dismissed with prejudice for failure to state a cognizable ground for habeas relief; Grounds 5A and 5B be dismissed with prejudice as procedurally barred; and Grounds 1, 2, 4A, 6A, 6B, 7A, 7B, 8A, and 9A be denied.  (Doc. 35 ¶ 43; Doc. 56 ¶ 43.)  Magistrate Judge Boyle also recommended that the Court deny a Certificate of Appealability.  (Doc. 35 ¶ 44; Doc. 56 ¶ 44.)  Magistrate Judge Boyle also advised,

> pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections to the Court . . . . Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the issues.

(Doc. 35 ¶ 45; Doc. 56 ¶ 45.)  On June 16, 2022, Plaintiff filed an Application for Enlargement of Time to File Objections to Report and Recommendation and Certificate of Appealability, requesting that the Court extend the deadline for him to object to Magistrate Judge Boyle's R&R by 30 days.  (Doc. 35 ¶ 45; Doc. 56 ¶ 45.)  In support, he stated: "Facility policy has made access to the law library and access to the dayroom to be able to

sit and write very limited." (Doc. 35 ¶ 46; Doc. 56 ¶ 46.)  The Court granted Plaintiff's request on June 17, 2022. (Doc. 35 ¶ 47; Doc. 56 ¶ 47.)  On July 14, 2022, Plaintiff filed a second Application for Enlargement of Time to File Objections to Report and Recommendations and File for Certificate of Appealability. (Doc. 35 ¶ 48; Doc. 56 ¶ 48.) Plaintiff requested a 30-day extension of the deadline to object to Magistrate Judge Boyle's R&R. (*Id.*)  As cause, Plaintiff stated he was

> in the process of sending money out off of his books to a private investigator to obtain case law cited by the Magistrate and [Plaintiff] needs time for that to go thru [sic].  Further and still access to the law library and dayroom is very limited making drafting a brief time consuming and difficult.

(Doc. 35 ¶ 49.)[3]  The Court granted Plaintiff's request on July 20, 2022, and extended the deadline for Plaintiff to file his objections to August 18, 2022.  (Doc. 35 ¶ 50; Doc. 56 ¶ 50.)  On August 18, 2022, Plaintiff filed a third Application for Enlargement of Time to File Objections to Report and Recommendations and Certificate of Appealability.  (Doc. 35 ¶ 51; Doc. 56 ¶ 51.)  He again requested a 30-day extension of the deadline to file objections to the R&R.  (Doc. 35 ¶ 51; Doc. 56 ¶ 51.)  As cause, Plaintiff stated:

> On 6-30-2022[,] [Plaintiff] did a money disbursement to send money off [his] books to a private investigator to obtain case law and have the investigator look into attorneys (pro bono or otherwise) that might be willing to help.  On 7-26-22 [sic] that disbursement was not permitted citing a Department Order 905. [Plaintiff] is currently in phase 3 of the grievance process with this facility and is attempting to give this facility the appropriate opportunity to resolve this issue before moving forward.  [Plaintiff] is requesting 60 days rather than 30 based on the uncertainty of how long the grievance process might take and if I'm successful and they do finally allow me to send money out to my investigator.  How long that will take plus

---

[3] Plaintiff "objects" to this asserted fact on the basis that he "cited multiple reasons [he] was trying to send money to the investigator." (Doc. 56 ¶ 47.)  However, the quoted basis was the only reason given in Plaintiff's Application for Enlargement of Time. (*See Witzig v. Shinn*, CV 21-08042-PCT-JAT, Doc. 37.)  Accordingly, Plaintiff's objection is overruled.  To the extent Plaintiff intended to dispute this fact, this fact is verified by the evidence and any dispute is therefore frivolous.

> how long it will take for the investigator to obtain the cases I need and send them in plus whatever else I might need him to do.

(Doc. 35 ¶ 52; Doc. 56 ¶ 52.)  On August 24, 2022, the Court granted Plaintiff's request and extended the deadline for Plaintiff to file objections to the R&R to October 18, 2022.  (Doc. 35 ¶ 53; Doc. 56 ¶ 53.)  Plaintiff served Objections to the R&R four days early on October 14, 2022.  (Doc. 35 ¶ 54; Doc. 56 ¶ 54.)  On October 20, 2022, Plaintiff filed an "Application for Certificate of Appealability and Statement of Reasons in Support [of] Request for COA from District Court."  (Doc. 35 ¶ 55; Doc. 56 ¶ 55.)  On November 21, 2022, Defendant Shinn filed a Response to Petition for Witzig's Objections to the Magistrate Judge's Report and Recommendation.  (Doc. 35 ¶ 56; Doc. 56 ¶ 56.)  On March 9, 2023, the Court issued its Order on Plaintiff's Petition for Writ of Habeas Corpus.  (Doc. 35 ¶ 57; Doc. 56 ¶ 57.)  The Court found that Plaintiff failed to object to the

> R&R's conclusion that Claim 3 is not cognizable on habeas because it is a state law claim, Claims 4B, 5C, 6C, 7C, 8B, and 9B are not cognizable under 28 U.S.C. § 2254(i) because they are all claims of ineffective assistance of post-conviction relief counsel, Claim 7A does not entitle [Plaintiff] to relief, 7B does not entitle [Plaintiff] to relief, and Claim 8A does not entitle [Plaintiff] to relief.  The Court hereby accepts and adopts the R&R's recommendations and conclusions as to these claims.

(Doc. 35 ¶ 58; Doc. 56 ¶ 58.)  The Court conducted a de novo review of the following claims: 1, 2, 4A, 5A, 5B, 6A, 6B, and 9A; however, the Court ultimately adopted Magistrate Judge Boyle's recommendation on those claims.  (Doc. 35 ¶ 59; Doc. 56 ¶ 59.)  In reaching its conclusion, the Court considered "procedural issues" raised in Plaintiff's objections:

> At pages 10-11 of his objections, [Plaintiff] raises some procedural issues.  For example, [Plaintiff] claims that the prison would not allow him to send money to an individual outside the prison. . . . [Plaintiff] also claims that he wanted more time in the law library.  However this court gave [Plaintiff] extensions of time from June to October to file his objections and [Plaintiff] filed complete objections.  Therefore, this additional objection is also overruled.

(Doc. 35 ¶ 60; Doc. 56 ¶ 60.)  The Court also denied Plaintiff's request to issue a Certificate

of Appealability.  (Doc. 35 ¶ 61; Doc. 56 ¶ 61.)  On April 10, 2023, Plaintiff filed a Notice of Appeal.  (Doc. 35 ¶ 62; Doc. 56 ¶ 62.)

### B.  CoreCivic Policies

Red Rock Correctional Center (RRCC), owned and operated by Defendant, houses ADCRR prisoners pursuant to a contract between CoreCivic and the State of Arizona.  (Doc. 35 ¶¶ 63-64; Doc. 56 ¶ 63.)[4]  The contract provides that CoreCivic will follow the policies and procedures (Department Orders) created by ADCRR.  (Doc. 35 ¶ 65; Doc. 56 ¶ 65.)  Department Order (DO) 905 provides that ADCRR acts as a fiduciary for all prisoner monetary transactions and includes procedures for prisoner funds and the discharge of those funds.  (Doc. 35 ¶ 79; Doc. 56 ¶ 79.)  All funds received for prisoners are deposited into and maintained in Inmate Trust Accounts (ITAs).  (Doc. 35 ¶ 81 Doc. 56 ¶ 81.)  If a prisoner intends to disburse money for a reason/to an individual not identified in DO 905, the disbursement may be approved only if the prisoner submits documentation to substantiate the request for disbursement of funds.  (Doc. 35 ¶ 86.)

To initiate a disbursement, a prisoner may request an Inmate Request for Withdrawal form from their Correctional Officer III (CO III).  (Doc. 35 ¶ 88; Doc. 56 ¶ 88.)  The CO III completes his portion of the form, and recommends whether to approve the prisoner-initiated disbursement.  (Doc. 35 ¶ 95; Doc. 56 ¶ 95.)  The request is then forwarded to the Deputy Warden (DW) for review; if the DW recommends a disbursement not listed in DO 905 be approved, he forwards the recommendations to the Regional Operations Director (ROD) for the ADCRR or equivalent ADCRR position for final review and determination.  (Doc. 35 ¶¶ 96, 99; Doc. 35-1 at 21.)  If the ROD recommends that the prisoner-initiated disbursement be denied, and if the prisoner disagrees with the denial, the

---

[4] Plaintiff objects on the basis that he does not "know" whether the asserted fact is true.  If Defendant has supported the asserted fact, it is Plaintiff's burden to point to evidence supporting his objection.  Plaintiff's assertions that he does not know whether a fact is true are not sufficient to support an objection or a dispute and the Court will accept Defendant's supported facts as true unless they are clearly contradicted by other parts of the Record.  *See* Fed. R. Civ. P. 56(e)(2).

prisoner may grieve the issue pursuant to ADCRR DO 802, Inmate Grievance Procedure. (Doc. 35 ¶ 107; Doc. 56 ¶ 107.)

### C. Plaintiff's Disbursement Request

On June 30, 2022, while confined at RRCC, Plaintiff requested case law from Private Investigator Cote. (Doc. 35 ¶ 140; Doc. 56 ¶ 140.)

On June 30, 2022, Plaintiff submitted an Inmate Request for Withdrawal – External form and requested that $60 be disbursed to Cote Investigations with a listed address. (Doc. 35 ¶¶ 120-21; Doc. 56 ¶¶ 120-21.) CO III Morrow then completed a portion of the form and recommended that the funds be disbursed. (Doc. 35 ¶ 126; Doc. 35-1 at 41.) On the form in the section completed by CO III Morrow, the check boxes for "Documentation Provided/Verified:" yes or no and "If yes, what type?" were left blank. (Doc. 35-1 at 41.) CO III Morrow submitted the Inmate Request for Withdrawal—External form to former CoreCivic DW Stolc for review on July 5, 2022. (Doc. 35 ¶ 127; Doc. 56 ¶ 127.) DW Stolc also recommended that the funds be disbursed and submitted the form to ADCRR DW Aplas for final review. (Doc. 35 ¶ 128; Doc. 56 ¶ 128.) DW Aplas was an ADCRR employee and the RRCC contract monitor in June and July 2022. (Doc. 35 ¶ 129.) DW Aplas denied Plaintiff's prisoner-initiated disbursement on July 6, 2025 and noted on the Inmate Request for Withdrawal-External form that the disbursement was denied per DO 905. (Doc. 35 ¶¶ 132-33; Doc. 56 ¶¶ 132-33.)

On July 12, 2022, Private Investigator (PI) Cote sent Plaintiff correspondence stating:

> I enclosed the case law that you requested except for two: Alderman v[.] U.S[.] and Williams v[.] Taylor could not be found. 1. Taylor v[.] Maddux[,] 2. Hurles v[.] Ryan[,] Hibbler v[.] Benedette[,] 4. Powell v[.] Alabama[, and] 5. Rose v[.] Lundy[.] If you need anything else, just let me know.

(Doc. 35 ¶ 146; Doc. 56 ¶ 146.) On July 14, 2022, Plaintiff messaged PI Cote:

> [S]o I got the case's [sic] last night. [T]his place had opened the package wrote not legal mail on it per [DO] 914 and delivered it as regular mail. [A]lso I put in the paperwork to send your payment 2 weeks ago and I did a separate money

> disbursement 2 days ago to our books and the books one went thru [sic] already.  [E]ither way know that I really appreciate you getting these cases to me quickly and I'll get you taken care of ASAP.  I'll go talk to my counselor as soon as we're off lockdown.

(Doc. 35 ¶ 148; Doc. 56 ¶ 148.)  On July 17, 2022, PI Cote indicated to Plaintiff that he had received the payment from Plaintiff's mother after Plaintiff's request for disbursement was denied.  (Doc. 35 ¶¶ 150, 156; Doc. 56 ¶¶ 150, 156.)

## V.    Arguments

Defendant argues it is entitled to summary judgment because its employees recommended that Plaintiff's disbursement be approved, but ADCRR employee DW Aplas denied the request, and DW Aplas was not employed by CoreCivic at the time.  Defendant further asserts that there is no evidence that Plaintiff suffered any actual injury because he requested and was granted three extensions of the deadline to serve objections to the R&R to October 18, 2022 and the evidence shows that he served "complete" objections to the R&R in advance of that deadline on October 14, 2022.  Defendant further asserts that Plaintiff cannot establish an actual injury where PI Cote provided Plaintiff all requested information well in advance of the deadline for Plaintiff to object to Magistrate Judge Boyle's R&R and PI Cote did not withhold any information Plaintiff requested due to Plaintiff's alleged inability to pay for his services.  Defendant argues that Plaintiff's *Monell* claim fails because he cannot establish an underlying constitutional violation and CoreCivic does not have a policy of disallowing prisoners to disburse money to private investigators and Plaintiff has not produced any evidence of a widespread custom or practice.  Defendant finally asserts that Plaintiff's claim for punitive damages must be dismissed because there is no evidence that CoreCivic recklessly or callously promulgated a policy, custom, or practice of disallowing prisoners to disburse money to private investigators.

In Response, Plaintiff asserts that Defendant mishandled his request to disburse money to his private investigator and upheld the incorrect decision to deny the disbursement during the grievance process.  Plaintiff asserts that this was a violation of his

First Amendment right to association and free speech and his right of access to the Courts. Plaintiff asserts that he was harmed by the failure to disburse funds to his private investigator because he would have sought more assistance from the private investigator if his request for disbursement of funds had not been denied. Specifically Plaintiff states that:

> P.I. Cote misunderstood Plaintiff's request and provided numbers to attorneys when Plaintiff was hoping P.I. Cote would reach out to these attorneys himself and try and find one that would take my case seeing as how I have no way to contact attorneys myself. . . . I planned to have him try pro bono attorneys and organizations that might take my case then move on to hiring a paid attorney if need be. Without P.I. Cote Plaintiff was unable to retain counsel. A feat likely accomplished had Plaintiff had P.I. Cote's assistance.

(Doc. 55 at 12.)

Plaintiff further asserts that Morrow should have "verified" his private investigator before forwarding his request for disbursement and if she had "verified Cote before forwarding the disbursement [sic] would've likely been approved." (Doc. 55 at 11.)

Plaintiff asserts that he had a First Amendment right to "consult with and obtain counsel thr[ough] P.I. Cote and [he] was denied legal assistance from P.I. Cote himself which obviously stopped when I couldn't pay him anymore which was directly caused by Defendants and their denial to send money to P.I. Cote." (*Id.* at 14.) Plaintiff asserts that at the time, he "had no other way to consult with and obtain counsel th[a]n thr[ough] P.I. Cote." (Doc. 46 at 27.)

## VI.    Discussion

To support a claim against CoreCivic, Plaintiff must show his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by CoreCivic. *See, e.g.*, *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012).

Here, Plaintiff has not shown that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by CoreCivic. Rather, the record shows that two CoreCivic employees recommended that Plaintiff's disbursement occur, but that the ultimate decision to deny the reimbursement was made by an employee of the

ADCRR.  Plaintiff asserts that although Morrow recommended that Plaintiff's request for a disbursement be approved, Morrow erred in failing to independently provide documentation verifying that Cote was a private investigator.  It is unclear why Morrow would have thought such documentation was necessary given that she recommended that Plaintiff's request for disbursement be approved, but even if she negligently failed to provide such documentation, she would not be individually liable for such negligence.  *See Merrick v. Inmate Legal Services*, 650 F. App'x 333, 334 (9th Cir. 2016) ("it is questionable that [an access-to-the-courts] claim can be premised on garden-variety negligence"); *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) ("[W]hen access to courts is impeded by mere negligence . . . no constitutional violation occurs."); *Pink v. Lester*, 52 F.3d 73, 77-78 (4th Cir. 1995) (no action under § 1983 for "negligent conduct that results in a denial of access to the courts"); *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004)("we have made clear that an allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts.").  Moreover, even if there were some evidence that Morrow was more than negligent, there is no evidence in the record that such failure to provide documentation was due to a policy, practice or custom of Defendant CoreCivic.  CoreCivic is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights.  *See Tsao*, 698 F.3d at 1139; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (there is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Indeed, according to Plaintiff's own testimony, it was the practice of CoreCivic employees to provide such documentation.  (Doc. 46 at 19 ("On every disbursement that I can find that I've ever done while I was here, if documentation was required, they would ask for it.  The ROD would ask the CO III and the COIII would ask the inmate.  As was the case with Exhibits E&G Disbursement to brother and Exhibit G disbursement to daughter.").)  Accordingly, Plaintiff has not shown that CoreCivic maintained a policy,

practice, or custom that resulted in a violation of his constitutional rights and summary judgment must be granted in favor of CoreCivic on this basis alone.

Additionally, Plaintiff has not shown that he was denied access to counsel or that his right of access to the courts was impeded by the denial of the disbursement and the denial of his grievances related to the disbursement. Plaintiff's assertions that he suffered actual injury or was denied access to counsel are speculative, conclusory, and too attenuated from the single denial of a disbursement to his private investigator to create a disputed issue of material fact. *See Taylor*, 880 F.2d at 1045 ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."); *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"). Indeed, it is entirely unclear from the record why Plaintiff needed PI Cote's assistance to contact possible counsel to assist him with his habeas claim, and unclear how counsel could have assisted Plaintiff after his objections to the Report and Recommendation were due. Likewise, there is no evidence that the denial of the disbursement request prevented Plaintiff from receiving any information from PI Cote. Rather, the communications between Plaintiff and PI Cote indicate that PI Cote provided Plaintiff the information that he was able to find and PI Cote was unhindered by Plaintiff's inability to pay him through disbursement. *See* Doc. 35 ¶ 143 ("PI Cote responded on July 8, 2022: "Drew, I did not receive the check yet and I know you are good for it. When I get the case law, I will print it out and mail it. I do not know of an appeals attorney. Marc Victor of Attorneys for Freedom does civil work. I do not know what they would charge."). Similarly, Plaintiff's contention that the single denial of a request for disbursement to PI Cote prevented PI Cote from providing Plaintiff further assistance is unsupported by any evidence. Plaintiff does not assert that he further attempted to get assistance from PI Cote, that he sought any further requests for

disbursement to PI Cote, that he was unable to pay PI Cote another way,[5] and does not assert how further assistance from PI Cote would have assisted him in his habeas action given the late stage of the habeas proceedings.  Accordingly, Defendant is also entitled to summary judgment because there is no evidence that Plaintiff's ability to access counsel or access the court was impeded by the single denial of a disbursement request to his private investigator.  *See Lewis v. Casey*, 518 U.S. 343, 352-53(1996) (to show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present).

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Hold (Doc. 39) and Defendant's Motion for Summary Judgment (Doc. 34).

(2)    Plaintiff's Motion for Hold (Doc. 39) is **denied**.

(3)    Defendant's Motion for Summary Judgment (Doc. 34) is **granted**, and the action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.

Dated this 31st day of July, 2026.

_____
James A. Teilborg
Senior United States District Judge

---

[5] Plaintiff asserts that he could not have his mother continue to pay PI Cote, but asserts no support for this statement and produces evidence that the prison allowed him to disburse money to his mother, brother, and daughter (Doc. 46 at 22 ¶ 39) indicating that he could have pursued other avenues to pay PI Cote.